Christopher Brady [CB4138]
Orlee Goldfeld [OG4142]
BUTZEL LONG, a professional corporation
380 Madison Avenue, 22nd Floor
New York, New York 10017
(212) 818-1110
*Attorneys for Defendant and*
 *Counterclaim-Plaintiff Amerimade Coat Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARDENT APPAREL S.A., <br><br> **Plaintiff,** <br><br> - against - <br><br> AMERIMADE COAT INC., <br><br> **Defendant.** | 08 CV 2139 (NRB)(RLE) <br><br> **ANSWER AND COUNTERCLAIMS** |
| AMERIMADE COAT INC., <br><br> **Counterclaim-Plaintiff,** <br><br> - against - <br><br> ARDENT APPAREL S.A. and C.N. INDUSTRIES, <br><br> **Counterclaim-Defendants.** | |

Defendant, Amerimade Coat Inc. ("Amerimade"), by its undersigned attorneys, Butzel Long, a professional corporation, answers the Complaint filed by plaintiff, Ardent Apparel S.A. ("AA" or "plaintiff"), as follows:

1. Amerimade denies knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph FIRST of plaintiff's Complaint.

2. Amerimade denies the averments contained in paragraph SECOND of plaintiff's Complaint, excepts admits that Amerimade is a corporation duly formed and existing under the laws of the State of New Jersey, that Amerimade's principal office is located in the City, County,

and State of New York, and that Amerimade is authorized to conduct business in the State of New York.

3. Amerimade admits the averments contained in paragraph THIRD of plaintiff's Complaint.

## AS AND FOR A FIRST CAUSE OF ACTION

4. Amerimade denies the averments contained in paragraph FOURTH of plaintiff's Complaint, except admits that during 2005 Amerimade ordered certain goods from plaintiff and from C.N. Industries ("CNI"), a company related to plaintiff, and requested that those goods be delivered to Amerimade.

5. Amerimade denies the averments contained in paragraph FIFTH of plaintiff's Complaint, except admits that Amerimade did receive certain goods from AA and CNI, Amerimade retained the goods, and that Amerimade made certain payments to AA and CNI for those goods.

6. Amerimade denies the averments contained in paragraph SIXTH of plaintiff's Complaint.

7. Amerimade denies the averments contained in paragraph SEVENTH of plaintiff's Complaint.

## AS AND FOR A SECOND CAUSE OF ACTION

8. Amerimade denies the averments contained in paragraph EIGHTH of plaintiff's Complaint, except admits that it has received demands from AA and CNI for payment and states that it has made payment to AA and CNI in full settlement, accord, and satisfaction of such demands.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiff's claims are barred by accord and satisfaction.

### Second Affirmative Defense

Plaintiff's claims are barred the doctrine of waiver and estoppel.

### Third Affirmative Defense

The Complaint fails to state a claim upon which relief can be granted.

## COUNTERCLAIM

1. Counterclaim Plaintiff Amerimade Coat, Inc. ("Amerimade") is a corporation duly formed and existing under the laws of the State of New Jersey, with its principal office located in the City, County, and State of New York. Amerimade is authorized to conduct business in the State of New York.

2. Based on information and belief, Counterclaim Defendant Ardent Apparel S.A. ("AA") is a corporation duly formed and existing under the laws of the Dominican Republic, with an address at Zona Franca Industrial, Santiago, Dominican Republic.

3. Based on information and belief, Counterclaim Defendant C.N. Industries ("CNI") is a corporation duly formed and existing under the laws of the Dominican Republic, with an address at Zona Franca Industrial, Santiago, Dominican Republic.

4. Jurisdiction in this district is predicated on 28 U.S.C. § 1332(a)(2).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a).

## FACTUAL BACKGROUND

6. Amerimade is a manufacturer of coats. In 2001, Amerimade and AA entered into a business relationship in which AA would manufacture coats according to Amerimade's specifications. Amerimade provided AA with all of the materials required, including fabric,

buttons, thread, and labels, and AA would cut and sew the coats and ship back the assembled product to Amerimade.

7. From time to time, Amerimade's orders were filled by C.N. Industries ("CNI"), a company related to AA.

8. Amerimade and AA and CNI had a contract in which AA agreed to assemble the coats at a price of $4.50 per coat.

9. Under the parties' agreement, the coats assembled by AA and CNI were to be produced within a tolerance of one-eighth of an inch (1/8").

10. The parties' agreement also provided that the finished product was to be shipped either to Newark, New Jersey or to Philadelphia, Pennsylvania.

11. The finished coats were then shipped to third party retailers.

12. AA and CNI breached their contract with Amerimade by failing to assemble coats within the permitted tolerance. Rather than being within the one-eighth of an inch tolerance, some coats were two inches off of their sizing.

13. AA and CNI further breached their contract with Amerimade by demanding additional amounts for assembling coats once all of the materials shipped by Amerimade arrived at AA's and CNI's facility in the Dominican Republic. Thus, while the agreement between the parties was that AA and CNI would cut and sew the coats for $4.50 per coat, AA and CNI demanded between $5.50 and $6.00 per coat. Because Amerimade had already shipped all of the components of the coats to AA and CNI and needed to meet its production schedule, Amerimade was compelled to pay the additional expense.

14. AA and CNI further breached its contract with Amerimade by failing to ship finished product in accordance with the production schedule. AA and CNI also sent incomplete shipments.

15. AA and CNI further breached their contract with Amerimade by failing to ship the coats by sea to New Jersey or Pennsylvania. On four separate occasions, AA and CNI delayed in making their shipment to sea. Thus, they shipped the product by air to Miami, Florida, which required Amerimade to incur the additional expense of trucking the coats from Miami to New Jersey.

16. Based on AA's and CNI's failure to prepare the coats within Amerimade's instructions, Amerimade incurred additional expenses by retaining an inspector to monitor the production in AA's and CNI's Dominican Republic facility.

17. The coats produced by AA and CNI for sale to a retailer were in such poor quality that the retailer ceased doing business with Amerimade, which caused Amerimade to lose an account valued between $1,100,000 to $2,100,000.

18. In addition, another customer of Amerimade threatened to reject a shipment of over 5,000 coats assembled by AA based on their poor quality. This customer further threatened to cease doing business with Amerimade.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

19. Amerimade repeats and reavers the averments contained in paragraphs 1-17 of this Counterclaim as if fully set forth herein.

20. Amerimade, AA, and CNI had a contract in which AA and CNI agreed to cut, sew, and ship back coats for a price of $4.50 per coat.

21. AA and CNI breached the contract by refusing to produce the coats at the agreed-upon price and demanded a higher price, ranging from $5.50 to $6.00 per coat.

22. Amerimade was damaged by AA's and CNI's breach because Amerimade was compelled to pay an additional $1.00-$1.50 per coat. In total, AA and CNI demanded an extra

$1.00 for 9,496 coats (or $9,496), an additional $1.25 for 3,806 coats (or $4,757.50), and an additional $1.50 for 153,311 coats (or $229,966.50). The total amount overcharged by AA and CNI in breach of their contract with Amerimade was $244,220.

23.  AA and CNI further breached their contract with Amerimade by failing to ship the coats by boat to New Jersey or Pennsylvania. Instead, AA and CNI shipped the coats to Miami, Florida on four different occasions. This led Amerimade to incur an additional charge to truck the goods from Miami to its warehouse in New Jersey. In addition, AA and CNI were late in shipping the coats to Amerimade, which caused Amerimade to incur additional expenses for air shipment. Amerimade was damaged in the amount of approximately $10,000 for improper and late shipment.

24.  Thus, AA and CNI breached their contract with Amerimade and damaged Amerimade in the amount of approximately $254,220, for which AA and CNI are liable.

## SECOND CLAIM FOR RELIEF

### Negligence

25.  Amerimade repeats and reavers the averments contained in paragraphs 1-23 of this Counterclaim as if fully set forth herein.

26.  Amerimade contracted with AA and CNI to cut and sew coats within certain specifications. Amerimade provided to AA and CNI all of the materials required for assembling the coats, including fabric, thread, buttons, and labels.

27.  AA and CNI were negligent in assembling the coats because the coats were off tolerance.

28.  AA and CNI breached their duty to Amerimade to assemble the coats because they were unfit for their intended purpose.

29. Thus, AA and CNI are liable to Amerimade for their negligence in an amount to be determined by the Court.

## THIRD CLAIM FOR RELIEF

### Injury to Reputation

30. Amerimade repeats and reavers the averments contained in paragraphs 1-28 of this Counterclaim as if fully set forth herein.

31. Amerimade has had an excellent reputation with its retailer customers for providing quality coats as ordered in a timely fashion.

32. Due to AA's and CNI's defects in assembling coats on behalf of Amerimade, Amerimade's reputation was damaged.

33. For example, Amerimade had a thirteen-year long standing relationship with a retailer. From 2001 through 2003, Amerimade had sales to this retailer in amounts ranging between $1.1 million and $2.1 million.

34. The coats assembled by AA and CNI for sale to this retailer repeatedly were rife with problems, including severe defects that led the retailer to reject the coats and that caused Amerimade to issue credits to it.

35. Ultimately, the retailer became so frustrated with the poor quality of the assembled coats that it decided to terminate its thirteen-year long relationship with Amerimade and ceased ordering any coats from Amerimade.

36. Amerimade's relationship with the retailer terminated due to the poor quality of work performed by AA and CNI

37. Similarly, another retail customer of Amerimade was on verge of rejecting coats assembled by AA and CNI because they were off tolerance from Amerimade's specifications.

Amerimade put in a lot of effort to convince this second retailer to continue doing business with it.

38. Amerimade's reputation was damaged by AA's and CNI's conduct because it lost one retailer as a customer and nearly lost a second retail customer.

39. Amerimade's damage will be determined based upon factual finding of the court, but upon information and belief, those damages are in excess of $100,000.

WHEREFORE, Amerimade Coat Inc. demands judgment on its Counterclaim as follows:

A. That Ardent Apparel and C.N. Industries be held liable for their breach of contract in an amount of $254,220;

B. That Ardent Apparel and C.N. Industries be held liable for their negligence in an amount to be determined by the Court; and

C. That Ardent Apparel and C.N. Industries be held liable for the injury it caused to Amerimade's reputation in an amount believed to be in excess of $100,000.

Dated:   New York, New York
         April 9, 2008

                                        s/ Orlee Goldfeld
                                        _____
                                        Christopher Brady [CB4138]
                                        Orlee Goldfeld [OG4142]
                                        BUTZEL LONG, a professional corporation
                                        380 Madison Avenue, 22nd Floor
                                        New York, New York 10017
                                        (212) 818-1110
                                        *Attorneys for Defendant and Counterclaim-
                                          Plaintiff Amerimade Coat Inc.*

## CERTIFICATE OF SERVICE

I hereby affirm that on the 9th day of April 2008, I caused a true and correct copy of the foregoing **Answer and Counterclaims** to be served by first class mail, postage prepaid, by depositing same in an official depository of the United States Postal Service on the following:

> Carol Morokoff, Esq.
> MAIDENBAUM & ASSOCIATES P.L.L.C.
> One Broadcast Plaza, Suite 218
> Merrick, New York 11566

> *Attorneys for Plaintiff*

s/ Orlee Goldfeld
_____